[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a civil complaint by the plaintiff, a California corporation specializing in the manufacture of jet engine parts, against the defendant, Pye Hogan Machine Co. a Connecticut corporation with its principal place of business in Old Saybrook, Connecticut. The plaintiff claims in its complaint that it entered into a contract with the defendant to manufacture certain jet engine parts and that the defendant has breached said contract by virtue of issuing a stop payment order on its initial check in partial payment thereunder and terminating its contract with the plaintiff.
The following constitutes the finding of facts and conclusions of law of this court, based upon its hearing and the relevant, credible and admissible evidence presented therein.
Michael Buxton is the controller and financial operations officer of the plaintiff corporation and amongst his duties in connection with his employment were the review and control over orders placed with the plaintiff and final approval of contracts entered into by the plaintiff. On April 29, 1993 the defendant sent a purchase order to the plaintiff dated April 21, 1993 offering to purchase 40 units of a particular jet engine part at a price of $500 per unit. The parts were to be forged of a specialized metal known as N-155. The credit terms offered by the defendant were 1/2% ten days, net 30 days. Lead time as stated in the order was 16 weeks after receipt of the order. This order was received in due course by the plaintiff and discussed at its normal morning management meeting. Part of the purpose of these meetings is to review all new orders prior to acceptance to insure that the financial terms are acceptable to the company. Michael Buxton became aware of this order and because the defendant was a new customer, he reviewed the credit history of the defendant prior to CT Page 12511 accepting the order. A Dun Bradstreet report was ordered and reviewed and after completing his review of the credit history of the defendant the plaintiff, through Mr. Buxton, determined that based upon its conclusions as to the defendant's ability to pay certain credit terms would be offered in connection with this contract. Accordingly, on May 10, 1993, Mr. Buxton contacted the defendant corporation regarding the proposed credit terms and offered to perform the contract with 50% of the total order being paid up-front prior to the start of the job and the balance due 30 days after shipment of the parts. On May 11, 1993 an employee of the plaintiff issued a letter to the defendant which stated these new credit terms in writing. This letter was received on May 11th by the defendant. On May 11, 1993 Mr. Buxton spoke with Mr. Woods, C.E.O. of the defendant and in said conversation the defendant rejected the proposed credit terms offered by the plaintiff and agreed with the plaintiff that the terms would be 25% of the order, that is $5,000 to be paid immediately, 25% to be paid prior to shipment and the balance to be paid within 45 days after shipment. This credit term of the contract was approved in a letter to the defendant from the plaintiff on May 13, 1993. Thus, at this point the primary negotiations of the parties were formalized into a binding contract wherein there was a meeting of the minds for the purchase and sale of 40 units at a price of $510 per unit with the credit terms 25%, 25%, and balance 45 days after shipment being the agreed upon financial terms.
At about this time the defendant was considering increasing its contractual offer and on May 19th issued a supplementary purchase order which constituted an offer to purchase an additional 63 units at a reduced price unit of $498 on all units which would like to order now, totaling 103 (the original 40 units plus 63 additional units). The use of the same purchase order number by the defendant was simply a unilateral choice and has no legal significance herein. On May 21, 1993 the plaintiff spoke with the defendant regarding the credit terms for the supplemental purchase order and informed the defendant that the terms which had been agreed upon for the original purchase order must be applied to the supplementary order on the same percentage basis, namely, 25% for the total order payable immediately, 25% payable before shipment and the balance payable within 45 days after shipment. The defendant refused to accept these terms and accordingly the court finds that no contract was ever entered into in connection with the defendant's offer to purchase an additional 63 units.
The defendant had sent a check in the amount of $5,000 in CT Page 12512 connection with its contract to purchase the original 40 units and said check having been deposited by the plaintiff on May 25, 1993 was returned by its bank marked payment stopped. On June 1, 1993 the defendants sent written notice to the plaintiff that it was terminating its order.
In order to perform its obligations under the contract for the production of 40 units the plaintiff would have been required to order 910 lbs of the metal N-155. Due to custom and usage of the trade the minimum amount that it could purchase from its vendor was 1,150 lbs. The court finds that this is a reasonable purchase to have been made not only as to its time of purchase but also as to the amount in accordance with the custom of the trade existing at the time. The cost of this raw material to the plaintiff for its performance of the contract was $11,787.00. Subsequent to the termination of the contract by the defendant, the plaintiff was able to sell 261 lbs. of this at a cost of $210.25 per lb. thus reducing its claim for damages by the amount of $2,675.25. Thus part of the plaintiff's claim for damage, the court finds to be in the amount of $9,112.25, the net cost of its purchase of raw materials for its performance.
The court finds that the defendant has breached the contract as aforesaid with the plaintiff and that there was no rational nor reasonable basis upon which the defendant could have presumed or assumed that the plaintiff would automatically accept the same dollar amount and credit terms for its increased order of 103 units. The court, as aforesaid, finds that the parties never had a meeting of the minds with respect to an increased order to purchase 103 units rather than the 40 units already under contract and accordingly the court can find no legal justification for the defendant having breached its contract with the plaintiff. At the time of the breach the plaintiff was ready, willing and able to perform its contract the with plaintiff and thus is entitled to damages from this court as a result of the defendant's breach.
In the evidence offered by the plaintiff the court finds that $5,280 was an reasonable expectation of profit on behalf of the plaintiff with performance under this contract. Failure of the defendant to perform under this contract was wrongful.
An action for breach of contract requires that the plaintiff plead and prove the existence of a contract, the defendant's breach of said contract, and damages resulting from said breach. Gomes v.Anco, Corp., 800 16 F. Sup. 123, 131 (D. Conn. 1993). The CT Page 12513 plaintiff has sustained its burden of establishing these elements of cause of action. The court finds also that the plaintiff has taken reasonable action to mitigate its damages and it is not reasonably expected that the plaintiff would engage in an wholesale onslaught onto the resale market in order to rid itself of the balance of 1,150 lbs. of N-155 metal it has on hand.
Combined damages due the plaintiff from the defendant is in the amount of $14,392.25. The court concludes under the circumstances of this case that it will not award interest in connection with the amounts found to be due and owing prior to judgment. The judgment may enter for the plaintiff in favor of the defendant in the amount as aforesaid $14,392.25, plus cost as may be taxed by the clerk.
It is noted herein that the court as a matter of record at the time of trial has and does hereby enter judgment in favor of the plaintiff in connection with all counts of the defendant's counterclaim.
The plaintiff is ordered to continue to hold said N-155 metal on hand and dispose of it as directed by the defendant at the defendant's cost and risk. If no reasonable order of disposition is received on or before February 1, 1996, the plaintiff may dispose of said metal at its discretion, with no further liability to the defendant for said metal.
It is so ordered.
HIGGINS, J.